# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| **LARRY ARNOLD,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) Civil Action Number |
| v. | ) **2:22-cv-00254-AKK** |
| | ) |
| **ELMINGTON PROPERTY** | ) |
| **MANAGEMENT LLC,** | ) |
| | ) |
| **Defendant.** | ) |

## MEMORANDUM OPINION

Larry Arnold is a disabled veteran who pays his rent with the assistance of a Section 8 housing voucher. Arnold brings this action against Elmington Property Management, LLC, his landlord, alleging that it violated the Fair Housing Amendments Act by deciding to no longer accept housing vouchers, effectively evicting Arnold. Elmington has moved to dismiss, arguing that Arnold fails to state a claim upon which relief may be granted. The motion is due to be denied.

## I.[1]

The Housing Choice Voucher Program, also known as Section 8, is a federal housing subsidy that assists low-income and elderly renters, as well as those with

---

[1] For purposes of ruling on Elmington's motion to dismiss, the court accepts Arnold's pleaded factual allegations as true. *See Erickson v. Pardus*, 551 U.S. 89, 93-94 (2007).

disabilities, "to afford decent, safe, and sanitary housing in the private market." Doc. 1 at 3 (internal citation omitted). Housing choice voucher recipients pay no more than 30% of their monthly income towards rent, and the local public housing agency pays the remainder directly to the landlord. *Id*.

### A.

Larry Arnold, who is 72, suffers from chronic obstructive pulmonary disease, neuropathy, and heart disease. *Id*. at 2. These disabilities prevent him from working, and Arnold also has difficulty walking and picking up large items and does not own a car. *Id*. Arnold's only income stems from public benefits he receives from the Social Security Administration and the Department of Veteran's Affairs that amount to $814 per month. *Id*. at 3. Arnold applied for and received a Section 8 housing voucher in 2005, and he began renting his apartment at Valley Crest Apartments in 2017 with the assistance of this voucher. *Id*. As of January 2022, Arnold's monthly rent totals $655, of which Arnold pays $119. *Id*. at 4. The Jefferson County Housing Authority pays the remaining $536. *Id*.

### B.

Elmington Property Management purchased Valley Crest Apartments in 2021. *Id*. at 3.[2] Shortly thereafter, Elmington told all residents who paid a portion

---

[2] Elmington avers that it manages, but does not own, Valley Crest, but it notes correctly that this point is irrelevant to the merits of its motion to dismiss. *See* doc. 6 at 2 n.3.

of their rent using housing choice vouchers that it would no longer accept these vouchers. *Id*. Arnold, however, cannot afford to continue renting at Valley Crest without the benefit of his housing choice voucher. *Id*. at 4. Arnold's financial situation and disabilities also mean that "moving to a different unit [would] pose[] significant challenges that would likely require abandoning much of his personal property." *Id*. And COVID-19 further hinders Arnold's ability to find new housing, particularly because his "poor health puts him at increased risk of suffering the most severe consequences of the virus." *Id*.

Arnold sent a letter to Valley Crest's property manager in November 2021 "documenting his disability status and the difficulties he would have in moving," and formally requesting "a reasonable accommodation in the form of a waiver to Elmington's policy not to accept HCVs." *Id*. Elmington eventually informed Arnold's counsel that it intended to deny Arnold's accommodation request. *Id*. at 4-5. Elmington did not respond to a request for "clarification on what element of [] Arnold's requested accommodation Elmington believed to be unreasonable." *Id*. at 5. And it again did not respond to Arnold's subsequent letter "describing Elmington's legal obligations under the Fair Housing Act, including its obligation to engage in an interactive process with [] Arnold regarding his request[ed] accommodation." *Id*.

3

### C.

Based on this conduct, Arnold brings failure-to-accommodate and disparate-impact claims under the Fair Housing Amendments Act. *Id*. at 5-8. Arnold contends specifically that: (1) "Elmington has refused to make reasonable accommodations in rules, policies, practices, or services, when such accommodations may be necessary to afford [] Arnold an equal opportunity to use and enjoy his apartment," in violation of the anti-discrimination provision of the FHAA; and (2) "Elmington's refusal to accept HCVs has a disparate impact on people with disabilities who are unable to work to make their rent payments," also in violation of the FHAA. *Id*. Arnold maintains that Elmington's allegedly discriminatory conduct "was intentional, willful, reckless, deliberately indifferent, and otherwise taken in disregard for [his] rights," and that the damages he will suffer as a result of this conduct entitle him to relief. *Id*. Elmington moves to dismiss for failure to state a claim. *See* doc. 6.

### II.

A pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This rule does not require plaintiffs to plead "detailed factual allegations" fully outlining the merits of their case. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). But to survive a motion to dismiss, a complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556

4

U.S. 662, 678 (2009) (internal citations omitted).  A complaint states a facially plausible claim "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*.  "This standard 'calls for enough fact to raise a reasonable expectation that discovery will reveal evidence' of the claim." *Jackson v. JPay, Inc.*, 851 F. App'x 171, 172 (11th Cir. 2021) (quoting *Twombly*, 550 U.S. at 556).

**III.**

Elmington raises two primary points in its motion to dismiss.  First, it asserts that Arnold cannot maintain a failure-to-accommodate claim because his requested accommodation – that Elmington accept his Section 8 voucher – is not reasonable.  Second, it argues that Arnold has failed to plead sufficient facts to maintain a disparate impact claim.  *See* docs. 6, 11.  These contentions are unavailing.

**A.**

The Fair Housing Amendments Act bars discrimination against renters on the basis of disability, and it specifically prohibits "a refusal to make reasonable accommodations in rules, policies, practices, or services, when such accommodations may be necessary to afford such person equal opportunity to use and enjoy a dwelling."  42 U.S.C. § 3604(f).  To state a failure-to-accommodate claim, then, a plaintiff must allege "(1) that he is disabled, (2) that he requested a reasonable accommodation, (3) that the requested accommodation was necessary to

5

afford him an equal opportunity to use and enjoy the dwelling, and (4) that the defendant refused to make the requested accommodation." *Schaw v. Habitat for Humanity of Citrus Cty., Inc.*, 938 F.3d 1259, 1264 (11th Cir. 2019) (internal citation omitted). Elmington contests only the second prong. *See generally* docs. 6, 11.

### 1.

The reasonableness inquiry in the FHAA context employs the classic burden-shifting approach: "[a] plaintiff carries the initial burden of showing that his proposed accommodation is reasonable; however, on a showing of a facially reasonable request, [it is] up to the defendant to demonstrate why the requested accommodation would cause undue hardship." *Schaw*, 938 F.3d at 1265. A plaintiff's initial burden in showing that his accommodation request was facially reasonable is "a relatively low bar," *id.*, and even at summary judgment – which presents a significantly higher evidentiary burden – to show reasonableness, a plaintiff "need only show that an accommodation seems reasonable on its face, *i.e.*, ordinarily or in the run of cases," *U.S. Airways v. Barnett*, 535 U.S. 391, 401 (2002) (internal citations omitted).

### 2.

Arnold has made this threshold showing. His requested accommodation would not deprive Elmington of any rental payments, but would instead merely alter the source of those funds, and Arnold has adequately alleged that the denial of this

accommodation would prevent him from using and enjoying his dwelling. The burden thus shifts to Elmington to an undue hardship.

Elmington, however, seems to disregard this burden-shifting framework, instead arguing categorically that "[f]orced participation in Section 8 is not a reasonable accommodation." Doc. 11 at 2-5. In support, Elmington directs the court to *Salute v. Stratford Greens Garden Apartments*, 136 F.3d 293 (2d Cir. 1998), in which the Second Circuit found that a landlord's participation in Section 8 and its related requirements necessarily imposed "unreasonable costs, an undue hardship, and a substantial burden." *Id*. at 301 (internal citations omitted). *See* doc. 6 at 6-8. Since the Eleventh Circuit in *Schaw* "cited *Salute* with approval," Elmington maintains, this court should similarly find that Arnold's requested accommodation is *per se* unreasonable. *Id*.

This argument fails for two reasons. First, whether granting Arnold's requested accommodation would impose an undue burden on Elmington is likely a question for summary judgment. If a plaintiff makes out his *prima facie* case, "the [landlord] must then show special (*typically case-specific*) circumstances that demonstrate undue hardship in the particular circumstances." *Barnett*, 535 U.S. at 402 (emphasis added). This context-dependent inquiry necessarily requires discovery into the specific hardships purportedly imposed on a landlord, and, thus, precludes dismissal before a plaintiff can test a defendant's claims through the

7

discovery process. Indeed, the *Salute* court affirmed the district court's entry of summary judgment only after the plaintiffs had the opportunity to conduct discovery. *See Salute*, 136 F.3d at 296-97. And in *Schaw*, after analyzing *Salute* and two other relevant decisions, the Eleventh Circuit distilled three principles in determining the reasonableness of an accommodation request at the summary judgment stage. Relevant here, the third principle entails that "*in evaluating the evidence*, a court may consider whether the plaintiff's requested accommodation would eliminate an 'essential aspect' of the defendant's policy or program or simply inconvenience it, keeping in mind the 'basic purpose' of the policy or program at issue, and weighing the benefits to the plaintiff against the burdens on the defendant." *Schaw*, 938 F.3d at 1266-68 (emphasis added). Critically, in the absence of such evidence, the court cannot conduct the requisite "balancing of the parties' needs." *Id*. at 1266-67 (citing *Bhogaita v. Altamonte Heights Condo. Ass'n, Inc.*, 765 F.3d 1277, 1288 (11th Cir. 2014). In other words, Elmington's motion is premature.

### 3.

And regardless, even if Elmington is correct that the court should consider its undue hardship defense at this stage in the proceedings, *see* doc. 11 at 4-5, Elmington has failed to meet its burden to make out such a defense. A landlord can show that granting an accommodation request would result in undue hardship if the accommodation would "require[] a fundamental alteration in the nature of a program

8

or impose[] undue financial and administrative burdens." *Schaw*, 938 F.3d at 1265 (internal citations omitted). As the *Schaw* court explained, "the difference between an accommodation that is required and a transformation that is not is the difference between saddling a camel and removing its hump." *Id*. (citing *Lucas v. W.W. Grainger, Inc.*, 257 F.3d 1249, 1260 (11th Cir. 2001)).

On this point, Elmington argues that participation in Section 8 generally "would impose an undue burden on [Elmington] and require [it] to fundamentally alter its rental practices." Doc. 6 at 8. But beyond this conclusory assertion, Elmington's only other hardship-related claim is that accepting Arnold's housing voucher "would necessarily require [Elmington] to comply with detailed audit, reporting, and maintenance obligations." *Id*. Elmington does not expand further on these obligations, instead relying exclusively on the *Schaw*'s recitation of the *Salute* court's finding that a landlord "[h]aving to rework its leasing program to accommodate [Section 8's] numerous requirements . . . would effect 'a fundamental alteration' of the complex's rental policies." *Schaw*, 938 F.3d at 1267 (citing *Salute*, 136 F.3d at 301).

*Salute* was decided over twenty years ago, however, and Section 8's substantive requirements for landlords may well have changed in that time. Moreover, *Schaw* did not sweepingly adopt *Salute*'s reasoning and indeed explicitly disagreed with one portion of the *Salute* court's analysis. *See id*. at 1270. And the

9

Eleventh Circuit has repeatedly admonished that reasonableness inquiries in the context of disability-discrimination claims are highly fact-specific, which stands in contrast to the main thrust of *Salute*. *See id*. at 1266-68; *Bhogaita*, 765 F.3d at 1289. The court is therefore unpersuaded by Elmington's argument that *Salute* requires a finding that Arnold's request that Elmington accept his Section 8 housing voucher is categorically unreasonable. Moreover, in the absence of discovery, the court has no basis from which to discern whether Elmington's asserted "audit, reporting, and maintenance obligations" that would come with Section 8 participation are more akin to "saddling a camel" or "removing its hump." *Schaw*, 938 F.3d at 1265 (internal citation omitted). Accordingly, Arnold is entitled to proceed to discovery on his failure-to-accommodate claim.

**B.**

The FHAA also prohibits "practices that have a disproportionately adverse effect and are otherwise unjustified by a legitimate rationale." *Schaw*, 938 F.3d at 1273-74 (citing *Tex. Dep't of Hous. & Cmty. Affairs v. Inclusive Communities Project, Inc.*, 135 S. Ct. 2507, 2513, (2015)). A plaintiff makes out his *prima facie* disparate-impact claim by alleging that the defendant's housing policy "makes housing options significantly more restrictive for members of a protected group than for persons outside that group." *Hallmark Developers, Inc. v. Fulton Cty.*, 466 F.3d 1276, 1286 (11th Cir. 2006) (internal citations omitted). Indeed, "a showing of

significant discriminatory effect suffices to demonstrate a [*prima facie*] violation of the Fair Housing Act." *Jackson v. Okaloosa County Fla.*, 21 F.3d 1531, 1543 (11th Cir. 1994)).

**1.**

Elmington argues that Arnold complaint "includes absolutely no factual allegations that other disabled tenants are affected by [Elmington's] policy." Doc. 6 at 9. To the contrary, Arnold pleads that his disabilities and resulting inability to work (1) render him unable to afford his rent at Elmington without the benefit of a voucher and (2) present significant obstacles to moving to a new apartment. Doc. 1 at 4. On these facts, the court can reasonably infer that Elmington's decision not to accept housing choice vouchers would restrict housing options for other Section 8 tenants with disabilities. And Arnold specifically alleges that "Elmington's refusal to accept [Housing Choice Vouchers] has a disparate impact on people with disabilities who are unable to work to make their rent payments." *Id*. at 7. The complaint need not contain more allegations about other residents at this time – that information is, presumably, exactly what Arnold will seek during discovery.

**2.**

Elmington's second argument, that its conduct in denying Arnold's accommodation request was justified by a legitimate rationale, relies on its averment that plaintiffs are unconditionally barred from bringing FHA claims based on a

landlord's decision not to participate in Section 8.  *See* doc. 6 at 9-10.  As stated previously, *see supra* Section III.A, Elmington has not shown that such a categorical rule is appropriate here.  The court therefore will not dismiss Arnold's disparate-impact claim on this basis.

## IV.

In sum, Arnold has pleaded sufficient factual content to maintain failure-to-accommodate and disparate-impact claims under the Fair Housing Amendments Act.  Accordingly, Elmington's motion to dismiss, doc. 6, is due to be denied.  A separate order will be entered.

**DONE** the 18th day of July, 2022.

*[signature]*

**ABDUL K. KALLON**
UNITED STATES DISTRICT JUDGE